ROGERS *v.* MERRITT.

1. APPEAL AND ERROR—WILFUL AND WANTON MISCONDUCT—QUESTION OF FACT.

On appeal from entry of judgment notwithstanding verdict for plaintiff, a guest passenger in car owned and operated by defendant administrator's decedent, question presented for review of evidence as viewed in light most favorable to plaintiff was whether or not there was an issue of fact as to whether or not defendant's decedent was guilty of wilful and wanton misconduct within the meaning of the guest passenger act (1 Comp. Laws 1929, § 4648).

2. AUTOMOBILES—LIGHTS ON ONCOMING CARS—PRESUMPTIONS.

A motorist, now deceased, whose view ahead is unobstructed, is presumed to have seen lights on car approaching from the opposite direction.

3. SAME—WILFUL AND WANTON MISCONDUCT—EXCESSIVE SPEED—WARNINGS.

While excessive speed, warnings of passengers and refusal of host to heed warnings may not as individual factual elements in a case be sufficient to charge a driver with wilful or wanton misconduct, they may all be considered in arriving at a final conclusion (1 Comp. Laws 1929, § 4648).

4. SAME—PERSISTENT MISCONDUCT BY HOST.

Persistence in host motorist's course of misconduct after ample warning, or after it has become apparent that continuance of

Reckless disregard of the safety of another, see 2 Restatement, Torts, § 500, and especially comment f.

such misconduct would result in injury to his guests, may present the question of whether or not the host is guilty of gross negligence or wilful and wanton misconduct under the guest act as a question of fact (1 Comp. Laws 1929, § 4648).

5. Same—Persistent Misconduct of Host—Speed—Wrong Side of Road—Evidence—Gross Negligence—Wilful and Wanton Misconduct.

Motorist's deliberate and persistent misconduct in driving his car at the excessive speed of 70 to 90 miles an hour in the center and on wrong side of gravel road around an S-curve and across narrow bridge and in disregard of warnings and protests of his guest passengers presented question of whether or not he was guilty of gross negligence or wilful and wanton misconduct for consideration of jury in guest's action arising out of head-on collision while host was so driving (1 Comp. Laws 1929, § 4648).

6. Same—Wilful and Wanton Misconduct—Evidence—Course of Trip.

In determining whether or not a host motorist was guilty of wilful and wanton misconduct, the jury could properly consider his reckless state of mind and also his persistently reckless course of conduct during the trip from its commencement to the point of the accident (1 Comp. Laws 1929, § 4648).

Appeal from Midland; Hart (Ray), J. Submitted October 5, 1943. (Docket No. 11, Calendar No. 42,428.) Decided December 29, 1943. Rehearing denied February 24, 1944.

Case by Phyllis Rogers, a minor, by Ernest Parsons, her next friend, against Nelson B. Merritt, administrator of the estate of Marshall King, deceased, for personal injuries sustained while a guest passenger in decedent's automobile. Verdict for plaintiff. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Reversed and remanded for entry of judgment for plaintiff.

*L. A. Vincent* and *Dahlem & Dahlem*, for plaintiff.

*H. Monroe Stanton*, for defendant.

STARR, J.  Plaintiff, a minor, by her next friend, sued to recover damages for her personal injuries sustained in an automobile accident which occurred about 8:30 p. m., May 3, 1941, while she was riding as a guest passenger in an automobile owned and driven by defendant's decedent.  The trial court reserved decision on defendant's motions for a directed verdict and submitted the case to the jury, which returned a verdict of $3,500 for plaintiff.  On motion, the trial court entered judgment for defendant *non obstante veredicto.*

Plaintiff appeals, and the only question presented is, does the testimony, viewed in the light most favorable to plaintiff, present an issue of fact for jury determination as to whether or not defendant's decedent was guilty of "gross negligence or wilful and wanton misconduct" within the meaning of the guest passenger statute (1 Comp. Laws 1929, § 4648 [Stat. Ann. § 9.1446]).

Decedent, with plaintiff and three other young people as guest passengers, was driving his Ford sedan from Midland to Gordonville.  He said that he was "in a hurry."  Soon after leaving Midland on M-20, a concrete road, he negotiated an S-curve at 55 to 60 miles an hour.  His car "slid over on the gravel" and went around the curve "on two wheels."  Plaintiff and other passengers protested against the speed at which he was driving and requested him to drive slower.  One of the passengers attempted to turn off the motor ignition, but decedent pushed her hand away, saying, "I am able to drive this car."  To the suggestion that he drive slower or permit one of the passengers to drive, decedent replied that it was his car and that he was going to "drive it the way he wanted to."  He then increased his speed and, as he crossed a narrow bridge over the Chippewa river at about 70 miles an

hour, plaintiff screamed and other passengers further protested against his manner of driving. After turning onto M-30, a gravel-surfaced road about 30 feet wide, he drove at a speed variously estimated at from 70 to 90 miles an hour. The testimony indicates that M-30 was an "average gravel road;" that it was somewhat rough and "bumpy in spots;" and that decedent drove on the left (wrong) side or "straddling the center of the road." One of his guest passengers testified in part:

"*Q.* Was anything said by any of the occupants of the car as to his driving on the left side of the road?

"*A.* Virginia Kennedy said, 'Why don't you drive on the right side of the road like you are supposed to' and he said, 'Well, because it is too rough.'
\* . \* \*

"*Q.* How far did he continue on the left side of the road?

"*A.* Well, he drove on the left side practically all of the way down. \* \* \* Through the center of the road and mostly on the left side.

"*Q.* Do you mean he was going back and forth from the center to the left side?

"*A.* Yes.

"*Q.* Did he continue that way until he reached the point where you collided with the other car?

"*A.* Yes.

"*Q.* Do you know where he was driving when he struck the other car?

"*A.* The center of the road."

One of decedent's passengers testified that she smelled liquor on his breath, but there was no evidence that plaintiff or the other passengers had been drinking.

A car driven by one Melvin Beebe, at a reasonable speed and on his right-hand side of the road, ap-

proached from the opposite direction. The road was dry, level, and straight; the weather was clear; and it was "just getting dark." Both cars had their lights on; decedent's view of the approaching car was unobstructed; and there was no interfering traffic. Plaintiff said to decedent, "Look out for the lights that is coming toward us." Under the conditions shown by the testimony decedent saw or is presumed to have seen the Beebe car approaching. The cars collided at or near the center of the road, the left front end of decedent's car striking the left front end of the Beebe car. The decedent, two of his guest passengers, and two passengers in the Beebe car were killed, and plaintiff was severely injured.

In his opinion granting defendant's motion for judgment notwithstanding the verdict, the trial court held that defendant's decedent was not guilty of gross negligence or wilful and wanton misconduct. In the case of *Greimel* v. *Fischer,* 305 Mich. 45, we said:

"In previous cases, we have attempted to define the elements that must be present to establish wilful or wanton misconduct within the provisions of the statute (*Willett* v. *Smith,* 260 Mich. 101), but have also pointed out that 'any definition or attempted dissection of the phrase is only relative, not determinative or exclusive, and slight difference in facts produce different results' (*Schneider* v. *Draper,* 276 Mich. 259), and that each case in which the issue is raised must be decided on its own particular facts. *Goss* v. *Overton,* 266 Mich. 62. And although excessive speed, warnings of passengers, refusal of the driver to heed warnings, may not as individual factual elements in a case be sufficient to charge a driver with wilful or wanton misconduct (*Bushie* v.

*Johnson,* 296 Mich. 8), they may all be considered in arriving at the final conclusion.''

In the case of *Rowe* v. *Vander Kolk,* 278 Mich. 564, 570, Mr. Justice North said:

''A characteristic element in many, if not all, of the cases in which this court has held a question of fact was presented under the guest act is that there was continued persistency in defendant's course of misconduct after ample warning, or after it became apparent that continuance of such misconduct would result in injury to the defendant's guests.''

In the present case defendant's decedent continuously drove his car in a reckless manner and at an excessive speed from the time he left Midland until the accident occurred. He barely avoided accidents when he rounded the S-curve on two wheels and when he crossed the narrow bridge over the Chippewa river at an excessive speed. In disregard of the warnings and protests of his guest passengers, he increased his speed and intentionally drove in the middle or on the left (wrong) side of M-30, a bumpy gravel road, at from 70 to 90 miles an hour. While so driving, with conscious indifference and reckless disregard of consequences, he collided head on with a car that was plainly visible, approaching on its proper side of the road at a reasonable speed.

The persistent recklessness of the decedent driver and his statement that it was his car and he was ''going to drive it * * * the way he wanted to'' clearly indicated, as we said in *Greimel* v. *Fischer,* *supra,* ''a reckless state of mind and that he intended to disregard the apparent danger of which he had' knowledge without regard to the consequences of the ensuing accident which must have been the only result 'obvious at the time.'' Decedent's conduct and his continued reckless driving

showed, as we said in *Sorenson* v. *Wegert,* 301 Mich. 497, 511, "an affirmatively reckless state of mind with intent to depart from careful driving." He deliberately imperiled the safety and lives of plaintiff and his other guest passengers. His conduct involved more than a single act of negligence; it involved intentional, continued, and persistent acts of negligence and recklessness, the obvious and apparent result of which was the accident in question. In determining whether or not decedent was guilty of wilful and wanton misconduct, the jury could properly consider his reckless state of mind and also his persistently reckless course of conduct during the trip from Midland to the point of the accident.

We are convinced that the testimony presented a question of fact for jury determination, as to whether or not defendant's decedent was guilty of gross negligence or wilful and wanton misconduct. The factual situations involved in the several cases cited by defendant distinguish them from the case at hand. We conclude that the trial court erred in granting defendant's motion for judgment *non obstante veredicto.*

See *Greimel* v. *Fischer, supra; Sorenson* v. *Wegert, supra; Rattner* v. *Lieber,* 294 Mich. 447; *Boswell* v. *Docsa,* 285 Mich. 559; *Murner* v. *Thorpe,* 284 Mich. 331; *Thomas* v. *Parsons,* 278 Mich. 276; *Wolfe* v. *Marks,* 277 Mich. 154; *Schneider* v. *Draper,* 276 Mich. 259; *Lucas* v. *Lindner,* 276 Mich. 704.

The judgment for defendant is reversed and the case remanded for entry of judgment for plaintiff on the jury's verdict of $3,500. Plaintiff shall recover costs.

CHANDLER, NORTH, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred with STARR, J. BOYLES, C. J., and WIEST, J., concurred in the result.